1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

9
10
11

| | |
|---|---|
| MARK E. A.,<br><br>            Plaintiff,<br><br>   v.<br><br>LELAND DUDEK, Acting<br>Commissioner of Social Security,<br><br>            Defendant. | Case No. ED CV 24-2281-E<br><br><br>**MEMORANDUM OPINION** |

12
13
14
15
16
17
18
19

## PROCEEDINGS

20
21

     Plaintiff filed a complaint on October 25, 2024, seeking review of the Commissioner's denial of disability benefits.  The parties consented to proceed before a United States Magistrate Judge on November 8, 2024.  Plaintiff filed "Plaintiff's Brief" on April 3, 2025.  Defendant filed "Defendant's Brief" on May 2, 2025.  Plaintiff did not file a timely reply brief.

///
///
///

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff applied for supplemental security income on August 4, 2020, alleging disability based on assertions of Bartter syndrome,[1] scoliosis, a back injury/pain, insomnia, colon cancer in remission, headaches, blurry vision, and learning disabilities (Administrative Record ("A.R.") 44, 258).  An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff and a vocational expert (A.R. 44-53, 58-72).

The ALJ found that Plaintiff has the following severe impairments: unspecified depressive disorder and chronic kidney disease (A.R. 46).  However, the ALJ also found that Plaintiff retains the residual functional capacity for light work, limited to:  (1) understanding, remembering, and carrying out simple instructions; and (2) no concentrated exposure to hazards such as working at

---

[1]    "Bartter[] Syndrome is an inherited defect in the renal tubules that causes low potassium levels (hypokalemia), low chloride levels, which causes metabolic alkalosis."  See McCutcheon v. Hartford Life & Acc. Ins. Co., 2009 WL 1971427, at *1 n.2 (C.D. Cal. July 1, 2009); see also  Bartter Syndrome, https://rarediseases.org/rare-diseases/bartters-syndrome/ (last visited May 5, 2025) ("Bartter syndrome is a general term for a group of rare genetic disorders in which there are specific defects in kidney function. . . .  The symptoms and severity of Bartter syndrome vary from one person to another and can range from mild to severe. . . . Treatment is aimed at correcting the electrolyte imbalances using supplements and certain medications such as nonsteroidal anti-inflammatories (NSAIDs) and diuretics.").

Plaintiff had been found disabled as of October 17, 2007, based on Bartter Syndrome, a seizure disorder, and depression (A.R. 76-80).  However, Plaintiffs disability benefits ended following a contrary hearing decision in 2018 (A.R. 44, 89).  In the current administrative proceeding, the Administrative Law Judge ("ALJ") found that Plaintiff had rebutted the presumption of continuing non-disability, and so the ALJ considered the claim anew (A.R. 44-53 (citing Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988)).

1    unprotected heights and operating heavy machinery.  See A.R. 48-52 (adopting

2    limitations consistent with the medical opinions, which the ALJ found persuasive,

3    and discounting Plaintiff's testimony and statements suggesting greater limitations).

4    The ALJ identified certain light jobs Plaintiff assertedly could perform and, on that

5    basis, denied benefits.  See A.R. 52-53 (relying on the vocational expert's

6    testimony at A.R. 69-71).  The Appeals Council denied review (A.R. 28-30).

7

8                              **STANDARD OF REVIEW**

9

10          Under 42 U.S.C. section 405(g), this Court reviews the Administration's

11   decision to determine if:  (1) the Administration's findings are supported by

12   substantial evidence; and (2) the Administration used correct legal standards.  See

13   Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499

14   F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Comm'r, 682 F.3d 1157, 1161

15   (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable

16   mind might accept as adequate to support a conclusion."  Richardson v. Perales,

17   402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v.

18   Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

19

20          If the evidence can support either outcome, the court may not

21          substitute its judgment for that of the ALJ.  But the Commissioner's

22          decision cannot be affirmed simply by isolating a specific quantum of

23          supporting evidence.  Rather, a court must consider the record as a

24          whole, weighing both evidence that supports and evidence that detracts

25          from the [administrative] conclusion.

26

27   Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations

28   omitted).

                                         3

**DISCUSSION**

Plaintiff contends that the ALJ erred by discounting Plaintiff's testimony and statements without stating legally sufficient reasons for doing so.  See Plaintiff's Brief, pp. 3-10.  As discussed below, the Court disagrees.  The Administration's findings are supported by substantial evidence and are free from material[2] legal error.

**I.    Substantial Evidence Supports the ALJ's Conclusion that Plaintiff Can Work.**

Substantial evidence supports the conclusion that Plaintiff can work.  As explained in more detail, infra, all the medical sources who opined concerning Plaintiff's capacity found limitations lesser than, or consistent with, the limitations assessed by the ALJ.  Compare A.R. 48 (ALJ's assessment) with A.R. 94, 97-99, 110, 113-15 (state agency physicians' opinions) and A.R. 453 (consultative examiner's opinion).  These opinions furnish substantial evidence to support the ALJ's residual functional capacity assessment.  See Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007) (opinion of examining physician based on independent clinical findings can provide substantial evidence to support administrative conclusion of non-disability); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion of non-examining physician "may constitute substantial evidence when it is consistent with other independent evidence in the record"); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (where the opinions of non-examining physicians do not contradict "all other evidence in the record," such opinions may

---

[2]    The harmless error rule applies to the review of administrative decisions regarding disability.  See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

furnish substantial evidence).

The vocational expert testified that a person with the residual functional capacity the ALJ found to exist could perform jobs existing in significant numbers in the national economy.  See A.R. 69-71.  The ALJ properly relied on the vocational expert's opinion in finding Plaintiff not disabled.  See Barker v. Sec'y of Health and Human Servs., 882 F.2d 1474, 1478-80 (9th Cir. 1989); Martinez v. Heckler, 807 F.2d 771, 774-75 (9th Cir. 1986).

## II.    The ALJ Did Not Materially Err in Discounting Plaintiff's Subjective Complaints.

Plaintiff argues that the ALJ failed to state sufficient reasons for discounting Plaintiff's testimony and statements.  The Court discerns no material error.

### A.    Summary of Plaintiff's Testimony and Statements

Plaintiff testified that he had not been able to work since around 2000, due to health problems and difficulty keeping up with work demands (A.R. 62).  His Bartter syndrome allegedly was causing him to have "a cardiac arrest seizure" when his potassium and magnesium got too low (A.R. 62).  Potassium and magnesium supplements reportedly helped manage Plaintiff's Bartter syndrome (A.R. 63).  Plaintiff said his electrolytes are still off balance, which assertedly causes fatigue, dizziness, fainting, insomnia, and difficulty getting up early or doing outdoor activities in the sun (A.R. 63-66, 68).  Plaintiff said he also has back pain from scoliosis, for which he was taking hydrocodone (A.R. 66).  He estimated that he could stand for only four to six minutes at a time and could lift only 40 pounds (A.R. 66-67).  Plaintiff claimed that his issues generally interfere with his ability to

keep up with the demands and pace of work (A.R. 69).

In a Function Report form completed by Plaintiff and his wife, Plaintiff reported limited daily activities and indicated that his wife did most of the household chores (A.R. 299-306).  Plaintiff stated that he cannot stand long due to his Bartter syndrome, he has uncontrolled seizures, and his equilibrium is off (A.R. 299).  Reportedly, it is hard for him to sleep, and he gets up late (A.R. 300).  He checked boxes on the form indicating that his conditions affect his lifting, seeing, memory, completing tasks, concentration, understanding, and following instructions, and Plaintiff claimed that he cannot complete tasks (A.R. 304).  However, Plaintiff did not check boxes to indicate that his conditions affect his standing, walking, sitting, kneeling, or stair climbing (A.R. 304).  Plaintiff stated that he could shop in stores for groceries twice a month for one hour, could walk two blocks before needing to rest for two minutes, could not pay attention for too long, did not follow written instructions well but did follow spoken instructions well, and did not handle stress or changes in a routine well (A.R. 302, 304-05).  Plaintiff said that he was born with Bartter syndrome and claimed he had "been on SSI all his life" (A.R. 306).

**B.    <u>Summary of the Medical Record</u>**

The treatment record is relatively sparse.  Plaintiff reported primary care treatment with Qazi Medical Group since September of 2015, and with San Gorgonio Memorial Hospital in July of 2020 (A.R. 261-62, 337).  The Administration obtained the San Gorgonio Memorial Hospital records (A.R. 414-23), and requested and obtained the Qazi Medical Group records for the period from July of 2020 through February of 2022 (A.R. 376-413, 424-48, 456-67).  Although the administrative hearing was not held until August of 2023, there are no

medical records post-dating those obtained through the Administration's initial requests.[3]

There are notes for regular doctor's visits with Qazi Medical Group from June of 2020 through December of 2021, to refill medications and to review lab work related to Plaintiff's Norco use, renal functioning, and cholesterol levels (A.R. 380-413, 428-46, 461-67; see also A.R. 327 (Plaintiff reporting that testing with Qazi Medical Group included only blood tests and EKGs)). Noted diagnoses include Bartter Syndrome, anemia, colon cancer, scoliosis, chronic pain syndrome, hyperlipidemia, lymphadenitis, hypokalemia, hypomagnesemia, vitamin D deficiency, and dyslipidemia, and opioid dependence (uncomplicated) (see, e.g., A.R. 380-99). Plaintiff was taking Norco for the diagnosed chronic pain syndrome, despite his opioid dependence diagnosis, and Plaintiff was also taking medications

---

[3]     Prior to the administrative hearing, Plaintiff provided information concerning his medical treatment since March of 2022. See A.R. 366 (reporting treatment with Qazi Medical Group in April of 2023, and with San Gorgonio Memorial Hospital in March of 2023 for Covid-19/low potassium). Plaintiff's counsel informed the ALJ by letter dated July 13, 2023, that counsel was "continuing to update medical records based on new information provided by our client" (i.e., for treatment with Qazi Medical Group and San Gorgonio Hospital as reported at A.R. 366), and, if records were not obtained in a timely manner, counsel would request an extension of time to submit records (A.R. 370). At the hearing more than a month later, the ALJ asked Plaintiff's counsel for the status of counsel's update (A.R. 60 (referencing A.R. 370)). Plaintiff's counsel indicated that there were "no records for the scope" from the hospital, and counsel was having some issues obtaining records from Qazi Medical Group because it has three locations (A.R. 61; but see, e.g., A.R. 376, 381, 425, 456, 462 (treatment notes and the prior requests for records using the same address)). The ALJ gave counsel two additional weeks to submit any updated records, but counsel apparently did not submit any such records. See A.R. 60-61 (admitting Exhibits B1A through B5F at the hearing); A.R. 73-467 (A.R. exhibits consisting of Exhibits B1A through B5F). The ALJ issued her unfavorable decision in October of 2023 – almost two months after the hearing (A.R. 44-53).

and supplements for Bartter syndrome and other conditions (<u>i.e.</u>, Aldactone, Atorvastatin, magnesium, potassium, and vitamin D) (<u>id.</u>).  During most visits, Plaintiff requested Norco refills (A.R. 383, 386, 388, 390, 393, 396, 398, 439, 464). The examinations report no abnormal findings, apart from a toe callous, and the notes have no details concerning Plaintiff's pain history or complaints, if any.  <u>See</u> A.R. 380, 383, 386, 388, 390, 393, 396, 398, 439, 461, 464 (stating reasons for appointments and general examination findings).  Plaintiff reportedly was depressed due to a death in the family and his renal labs had changed in August of 2020, but he reportedly was "doing well" with "stable" renal functioning by October of 2020 (A.R. 396-99).  He had no complaints in December of 2020 (A.R. 393-94).  His renal functioning again was stable in February of 2021 (A.R. 390-91). Plaintiff had no new complaints in May of 2021 (A.R. 388-89).

In July of 2020, Plaintiff went to the emergency room at San Gorgonio Memorial Hospital for chest pain and shortness of breath following an argument (A.R. 415-23).  His colon cancer reportedly was in remission (A.R. 415).  Physical examination findings were negative for any abnormalities, and Plaintiff had normal strength and sensation (A.R. 415-16).  An EKG and chest imaging were normal (A.R. 416-17).  His potassium, chloride, and magnesium levels were low (A.R. 416).  Plaintiff was diagnosed with acute chest pain provoked by a stressful event, hypokalemia, hypomagnesemia, and Bartter syndrome, and Plaintiff was observed to be in stable condition after treatment with aspirin, potassium, and magnesium (A.R. 415, 417).

Consultative examiner Dr. Christpher Cooper provided a comprehensive psychological evaluation dated September 18, 2021 (A.R. 449-54).  Plaintiff complained of depression since childhood, increased significantly after the death of his son in 2001, and attention, memory, and concentration deficits with a history of

special education classes and a ninth grade education (A.R. 449-50). Plaintiff was taking no medications for his psychiatric symptoms and had never participated in psychiatric medication management or psychotherapy (A.R. 449). Plaintiff said he had tried to work for two months, but claimed he could not keep up with the pace and had been terminated (A.R. 450).

On mental status examination, Plaintiff reportedly had a sad mood and congruent affect, diminished immediate and recent memories but intact remote memory, fair fund of knowledge, inability to complete simple calculations, poor attention and concentration, poor abstract thinking, but good judgment (A.R. 450-51). Psychological testing showed Plaintiff had a full scale IQ of 63, in the extremely low intelligence range, with weakness noted for working memory, extremely low to borderline memory and recall with weakness in immediate memory, and neurological deficits with impaired attention, memory and executive control (A.R. 451-53). Dr. Cooper diagnosed an unspecified depressive disorder with a fair prognosis (A.R. 453). Dr. Cooper opined that Plaintiff would have only mild impairment in his abilities to perform simple and repetitive tasks, accept instructions from supervisors, interact with coworkers and the public, perform work activities on a consistent basis, complete a normal workday/workweek without interruptions from his psychiatric condition, and deal with usual workplaces stress (A.R. 453). According to Dr. Cooper, Plaintiff would have moderate impairment in his ability to perform detailed and complex tasks (A.R. 453).

State agency doctors reviewed the foregoing records in October of 2021 and February of 2022 (A.R. 88-118). On initial review, the state agency doctor found no changed circumstances to overcome the presumption of continuing non-disability (A.R. 88-102). On initial and reconsideration reviews, the doctors found Plaintiff's chronic kidney disease was severe, his depression was not severe, and

1    opined that Plaintiff was capable of a range of light work consistent with the ALJ's

2    physical residual functional capacity assessment (A.R. 94, 97-99, 110, 113-15).

3    There are no opinions in the record by any examining source regarding Plaintiff's

4    physical abilities or limitations.

5

6       C.    **The ALJ Stated Legally Sufficient Reasons for Discounting**

7             **Plaintiff's Subjective Testimony and Statements.**

8

9           An ALJ's assessment of a claimant's credibility is entitled to "great weight."

10   Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779

11   F.2d 528, 531 (9th Cir. 1985).  Where, as here, an ALJ finds that the claimant's

12   medically determinable impairments reasonably could be expected to cause the

13   alleged symptoms (A.R. 50), any discounting of the claimant's complaints must be

14   supported by "specific, cogent" findings.  See Berry v. Astrue, 622 F.3d 1228, 1234

15   (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); but see Smolen

16   v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must offer

17   "specific, clear and convincing" reasons to reject a claimant's testimony where

18   there is no evidence of "malingering").[4]

19   ///

20

---

21       [4]    In the absence of an ALJ's reliance on evidence of "malingering," most
22   recent Ninth Circuit cases have applied the "clear and convincing" standard.  See,
     e.g., Nerio Mejia v. O'Malley, 120 F.4th 1360, 1363 (9th Cir. 2024); Ferguson v.
23   O'Malley, 95 F.4th 1194, 1197-98 (9th Cir. 2024); Glanden v. Kijakazi, 86 F.4th
     838, 846 (9th Cir. 2023); Smartt v. Kijakazi, 53 F.4th 489, 497 (9th Cir. 2022);
24   Leon v. Berryhill, 880 F.3d 1041, 1046 (9th Cir. 2017); see also Ballard v. Apfel,
25   2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases).  In
     Ahearn v. Saul, 988 F.3d 1111, 1116 (9th Cir. 2021), the Ninth Circuit appeared to
26   apply both the "specific, cogent" standard and the "clear and convincing" standard.
27   In the present case, the ALJ's findings are sufficient under either standard, so the
     distinction between the two standards (if any) is academic.
28

---

1    Generalized, conclusory findings do not suffice.  An ALJ's credibility

2    findings "must be sufficiently specific to allow a reviewing court to conclude the

3    ALJ rejected the claimant's testimony on permissible grounds and did not

4    arbitrarily discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882,

5    885 (9th Cir. 2004) (internal citations and quotations omitted); see Holohan v.

6    Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically

7    identify the testimony [the ALJ] finds not to be credible and must explain what

8    evidence undermines the testimony"); Smolen v. Chater, 80 F.3d at 1284 ("The

9    ALJ must state specifically which symptom testimony is not credible and what facts

10   in the record lead to that conclusion."); see also SSR 96-7p (explaining how to

11   assess a claimant's credibility), superseded, SSR 16-3p (eff. Mar. 28, 2016).[5]

12

13   In the present case, the ALJ summarized Plaintiff's testimony and statements

14   and the medical evidence, which the ALJ found only "partially support[ed]"

15   Plaintiff's statements regarding the alleged intensity, persistence, and limiting

16   effects of his symptoms (A.R. 49-51).  The ALJ reasoned that:  (1) the "positive

17   objective clinical and diagnostic findings . . . [did] not support more restrictive

18   functional limitations than those [the ALJ] assessed" (e.g., physical examinations

19   showed Plaintiff was well developed, well nourished, had clear lungs, no edema,

20   full range of motion, and normal heart functioning, and objective findings otherwise

21   were normal) (A.R. 50 (referencing A.R. 376-423, 449-67)); (2) Plaintiff had not

22

23   [5]    Social Security Rulings are binding on the Administration.  See Terry v.
24   Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).  The appropriate analysis under
     the superseding SSR is substantially the same as the analysis under the superseded
25   SSR.  See R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016)
     (stating that SSR 16-3p "implemented a change in diction rather than substance")
26   (citations omitted); see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir.
27   2017) (suggesting that SSR 16-3p "makes clear what our precedent already
     required").
28

11

1    received the type of medical treatment one would expect for a totally disabled

2    person (i.e., his treatment was "essentially routine and conservative in nature," and

3    the lack of more aggressive treatment suggested Plaintiff's symptoms were not as

4    severe as he alleged) (A.R. 49); and (3) Plaintiff's allegations were greater than

5    expected in light of the objective medical evidence which suggested Plaintiff's

6    medications were "generally successful" in controlling his symptoms (A.R. 49-50

7    (citing A.R. 390, 393, 396, 430 (notes stating that Plaintiff was doing well, had no

8    new complaints, was continued on the same medication regimen, and/or had stable

9    renal functioning))).  In the context of the entire record, the ALJ's stated reasoning

10   is legally sufficient.

11

12        First, an ALJ permissibly may rely in part on a lack of supporting medical

13   evidence in discounting a claimant's allegations of disabling symptomatology.  See

14   Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although a lack of medical

15   evidence cannot form the sole basis for discounting pain testimony, it is a factor the

16   ALJ can consider in his [or her] credibility analysis."); Rollins v. Massanari, 261

17   F.3d 853, 857 (9th Cir. 2001) (same).  Further, "[w]hen objective medical evidence

18   in the record is inconsistent with the claimant's subjective testimony, the ALJ may

19   indeed weigh it as undercutting such testimony."  Smartt v. Kijakazi, 53 F.4th 489,

20   498 (9th Cir. 2022) ("Smartt"); see Carmickle v. Comm'r, 533 F.3d 1155, 1161

21   (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for

22   rejecting the claimant's subjective testimony"); see also SSR 16-3p ("[O]bjective

23   medical evidence is a useful indicator to help make reasonable conclusions about

24   the intensity and persistence of symptoms, including the effects those symptoms

25   may have on the ability to perform work-related activities. . ."").  In the present case,

26   the ALJ reasonably observed that the medical evidence, including examination

27   findings, imaging studies and medical opinions, did not support Plaintiff's

28   subjective complaints. See id.; see also Kitchen v. Kijakazi, 82 F.4th 732, 739 (9th

12

Cir. 2023) (finding adequate ALJ's reasoning for discounting subjective complaints as contradicted by the medical opinions and evidence suggesting that claimant's impairments could be controlled effectively with medications).

Second, a limited or conservative course of treatment sometimes can justify the discounting of a claimant's testimony.  See, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (in assessing the credibility  of a claimant's pain testimony, the Administration properly may consider the claimant's "minimal conservative treatment" and the treating physician's failure to prescribe (and the claimant's failure to request) medical treatment commensurate with "supposedly excruciating pain") (citing Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)); Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993) (permissible credibility factors in assessing pain testimony include limited treatment and minimal use of medications).  As the ALJ concluded, the record here does not appear to reflect the type of treatment one would expect for a person suffering the disabling severity of symptoms claimed by Plaintiff.  For example, (1) during most of the alleged disability period, there was an absence of regular medical visits to monitor Plaintiff's conditions; and (2) although Plaintiff was prescribed Norco for his diagnosed chronic pain syndrome  and medications and supplements for his Bartter syndrome and other conditions, there is no other reported treatment for his assertedly disabling conditions, and there are no referrals for more aggressive treatment by specialists (e.g., epidural injections, nerve blocks, physical therapy, or muscle relaxants by a pain management specialist, or closer management by a kidney disease specialist).  See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (absence of treatment for back pain during half of the alleged disability

period, and evidence of only "conservative treatment" when the claimant finally sought treatment, sufficient to discount claimant's testimony); see also Smartt, 53 F.4th at 493, 500 (ALJ's reasoning was sufficient to discount claimant's testimony where ALJ cited "documented evidence of [post-surgical] 'conservative treatment,' including physical therapy, temporary use of a neck brace and wheelchair, and ongoing pain medication" (elsewhere described as "chronic opioid use"), and evidence suggested overall improvement with treatment); compare Boggs v. Kijakazi, 2022 WL 1657022, at *1 (9th Cir. May 25, 2022) (finding evidence did not support conclusion that treatment was routine and conservative where claimant had a "steady regimen" of opioids such as hydrocodone for years, his symptoms were only managed as long as the claimant remained sedentary, and treatment notes reflected severe pain and limitations despite use of pain medications).  Additionally, and significantly, the state agency physicians who reviewed the record found that Plaintiff's medication treatment was not consistent with his alleged symptom-related limitations (A.R. 96, 112).

Third, consistent with the foregoing authorities, the ALJ observed that Plaintiff's treatment (which included Norco) "would normally weigh somewhat in [Plaintiff's] favor," [6] but the record suggested that Plaintiff's treatment was successful in controlling his symptoms (A.R. 49-50).  "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017); see also Smartt, 53 F.4th at 500; Lapuzz v. Berryhill, 740 Fed. App'x 596, 597 (9th Cir. 2018)

---

[6]    Indeed, this Court previously has stated that consistent treatment with narcotic pain medications (including Norco) cannot properly be characterized as "conservative" within the meaning of Ninth Circuit jurisprudence.  See Brandi T. v. Kijakazi, 2022 WL 16894519, at *4 (C.D. Cal. May 24, 2022) (collecting cases pre-Smartt and finding that regular treatment, taking prescription narcotic pain medications and undergoing urologic surgery was not "conservative" treatment).

1    ("effectiveness of medication is a clear and convincing reason to discredit claimant

2    testimony") (citing Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008));

3    Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be

4    controlled effectively with medication are not disabling for the purpose of

5    determining eligibility for SSI benefits"); see generally 20 C.F.R. § 416.929(c)

6    (type and effectiveness of treatment are factors to consider when evaluating

7    symptom allegations).  Detail in treatment records cited by the ALJ reflects that

8    Plaintiff was doing well, his renal functioning was stable, he had no complaints, or

9    no new complaints, and his treatment regimen did not change (A.R. 391-99, 439-

10   40, 461-65).

11

12        Plaintiff faults the ALJ's decision for an alleged lack of specificity.  See

13   Plaintiff's Brief, pp. 6-8.  The ALJ arguably did not specifically discuss certain of

14   Plaintiff's particular asserted limitations (i.e., Plaintiff's testimony that he

15   supposedly cannot stand for more than four to six minutes at a time or Plaintiff's

16   report that he supposedly can walk for only two blocks before needing to rest for

17   two minutes) (A.R. 49-51).  However, given the adequacy of the ALJ's stated

18   reasoning discussed above, and given the sparse medical record, the ALJ's arguable

19   lack of more specific discussion of particular subjective assertions does not suggest

20   that the ALJ arbitrarily discounted Plaintiff's testimony or statements.  The ALJ

21   expressly stated that she had "considered all of [Plaintiff's] subjective complaints,

22   including the subjective complaints from the hearing testimony and written

23   submissions" (A.R. 49).  Further, there is no support in the medical record for

24   Plaintiff's extreme asserted standing and walking limitations – no support in the

25   recorded complaints of Plaintiff, the observations of physicians, or the treatments

26   ///

27   ///

28   ///

prescribed.[7] An ALJ need not "perform a line-by-line exegesis of the claimant's testimony." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020); see also Smartt, 53 F.4th at 499 (in discounting testimony, an ALJ must "show his work" with rationale that is "clear enough that it has the power to convince").

Because the ALJ's credibility findings were sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds, Moisa v. Barnhart, 367 F.3d at 885, the Court defers to the ALJ's credibility findings. See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Sec'y of Health & Human Srvs., 44 F.3d 1453, 1464 (9th Cir. 1995). Deference to the ALJ's credibility findings requires affirmance of the administrative decision in the present case.[8]

///

///

///

///

---

[7]    As a point of comparison, when Plaintiff was deemed disabled in 2009, the Administration found that Plaintiff had been in and out of emergency treatment for exacerbations of his Bartter syndrome (A.R. 79). Then, Plaintiff's potassium levels and electrolyte imbalances were causing him nausea, dizziness, and weakness, and his weight was fluctuating between 98 and 100 pounds (A.R. 79). The current treatment record does not reflect the symptoms, frequency/intensity of treatment, or the weight issues Plaintiff previously endured. See A.R. 380, 383, 386, 388, 390, 393, 396, 398, 415, 439, 461, 464  (reporting weights from 160 to 167 pounds).

[8]    The Court should not and does not determine the credibility of Plaintiff's testimony and statements concerning his subjective symptomatology. Absent legal error, it is for the Administration, and not this Court, to do so. See Magallanes v. Bowen, 881 F.2d 747, 750, 755-56 (9th Cir. 1989).

1

**CONCLUSION**

2

3    For the foregoing reasons,[9] judgment shall be entered in favor of the

4  Defendant and the action shall be dismissed with prejudice.

5

6    LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8    DATED: May 21, 2025

9

10    _____

11    CHARLES F. EICK
      UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  _____

27  [9]    Neither Plaintiff's arguments nor the circumstances of this case show any
    "substantial likelihood of prejudice" resulting from any error allegedly committed
    by the Administration.  See generally McLeod v. Astrue, 640 F.3d 881, 887-88 (9th
28  Cir. 2011).